UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

RECEIVED
BY MAIL
MAR 14 2005
CLERK, US DIST. COURT
ST. PAUL, MN

| | | |
|---|---|---|
| TYRONE POWELL<br>Petitioner | ) | |
| Vs. | ) | Case No. |
| UNITED STATES OF AMERICA<br>Respondent | ) | CR02-63-(2)-PAM/JGL<br>CV 05-540 PAM |

MEMORANDUM IN SUPPORT OF TYRONE POWELL'S
2255 MOTION FOR COLLATERAL RELIEF

Comes now the petitioner/defendant Tyrone Powell "pro se", to file this memorandum in support of his Title 28 USC 2255 motion collaterally attacking his sentence as unlawful and incorrect.

As a preliminary matter, the petitioner, invokes the full effect and measure of the liberal pleadings and construance doctrine as expressed in Haines V Kerner, 404 US 519 (1972); Cruz V Beto, 405 US 310 (1972). (Pro se pleadings must be liberally construed to allow for the development of any potential meritous claim); Boag V Mac Dougal, 454 US 364 (1982), Hill V United States, 368 US 424, 430 (1987). "Pro se" pleadings are not subject to dismissal on mere technicality; pleadings are to be liberally construed.

Futher Peavy V United States, 31 F3d 1341 (6th Cir 1994) (Summary dismissal of "pro se" 2255 motion without a hearing is inappropriate where facts are alleged that are not clearly and convincingly false on the record. "Palpably incredible or patently



SCANNED
MAR 15 2005
U.S. DISTRICT COURT ST. PAUL

frivolous".... reviewing court cannot draw any meaningful inferences from a defendants silence on any given disputed fact.

Tyrone Powell states that this motion is "timely filed", having been served upon this Court and the government within the applicable time period pursuant to Houston V Lack, 101 L.Ed. 2d 245 (1988) and Title 28 USC 2255(4). The statements made herin this pleading are sworn as true pursuant to Title 28 USC 1746, as if presented in form of sworn affidavit. Therefore this pleading sworn as true to the best of petitioners knowledge, and of which facts he is personally aware obligates this Court to take all facts alleged as "true" and as evidentary in nature. Hooks V Hooks, 771 F2d 935, 945 - 46. Verified complaint is equivalent to affidavit; Davis V Zahradvick, 600 F2d 458, 460 (4th Cir 1979); Williams V Griffith, 952 F2d 820, 823 (4th Cir 1991).

## MEMORANDUM OF FACTS AND PROCEDURAL HISTORY

Petitioner Powell was convicted in the United States District Court for the District of Minnesota. Petitioner entered a plea agreement in violation of Title 21 USC 841 and 846(b)(1)(A). As a result of said plea petitioner recieved a term of 120 months with 5 years supervised release on February 10, 2003.

THIS PETITION IS TIMELY FILED PURSUANT

TO TITLE 28 USC 2255 (4)

In 1996, Congress enacted the Anti-terrorism and effective Death Penalty Act ('AEDPA'), which established a one-year period of limitation for filing a motion under 28 USC 2255. The Amended 2255 states :

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of ....

(1) the date on which the judgement of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due dilligence.

Applying the statute to the facts of this case, Powell now brings to this courts attention through the exercise of "due dilligence" why said USSG § 4A1.1(d) enhancement was attributed to Powell in error. The date in which Title 28 USC § 2255(4) the execise of due dilligence would begin in this case on petitioners reciept of documentation supporting facts of his claims through the exercise of due dilligence that date being (Dec.29, 2003).

ERRONEOUS ATTRIBUTION OF THE USSG § 4A1.1(d).

In support of this claim petitioner Powell offers the following :

During the District proceeding petitioner and acting counsel for the defense were unable to produce supporting documentation in order to refute the factual accuracy regarding the probationers adoption and attribution of the USSG § 4A1.1(d). However now through the exercise of due dilligence petitioner has obtained said documents proving said enhancement was applied in error.

Prior to sentencing in this case and upon reciept of the PSI defence counsel Kyle White discussed with Mathew Twightly the Probationer in this case the possibility of the existence of said documentation that would refute the application of 4A1.1(d). During this time frame Probationer coupled with the efforts of defense counsel were unable to produce such documentation. As a result of this Mr. Mathew Twighty stated that he was compelled to apply said enhancement and stand behind its' attribution in the PSI. However futher stating that in the event that such documentation were to be presented to the court contrary to the above mentioned Mr. Twighty would futher agree that USSG § 4A1.1(d) was applied in error.

Pursuant to the USSG § 4A1.1(d) it states as follows:

Two points are added if the defendant commited any part of the instant offense (ie, any relevant conduct) while under any criminal justice sentence, including probation, parole supervised releace, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such a sentence

See § 4A1.2(n) For the purposes of this item, a "criminal justice sentence" means a sentence countable under § 4A1.2 (definition and instructions for compiling criminal history) having a custodial or supervisory component, although active supervision is not required for this item to apply. For eg., a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (eg. a probation parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence would have expired absent such warrant. See § 4A1.2(m).

Petitioner Powell argues that the language of 4A1.1(d) is plain and would most certainly apply if in fact Powell committed the instant offense while serving a term of probation. However in this case Powell's term of probation by no means would trigger the attribution of 4A1.1(d) due to the fact that date of commencement for term of probation began March 15, 2000, rendering the date of completion March 15, 2001 as court ordered by the municipal Court of South Bay Judicial District, County of Los Angeles, State of California. (See attached supporting documentation). This as the record also supports coupled with the fact that the instant offense in this case began February 21, 2002 clearly shows that the attribution of the USSG 4A1.1(d) was applied in error. See criteria for 4A1.1(d) as cited above. With this being brought to light Powell asserts that the attribution of the USSG 4A1.1(d) was erroneously applied. Futher this application constitutes PLAIN ERROR and most certainly affects substantial constitutional rights.

Failure to correct such an error would definately affect the fairness and integrity of the judicial proceedings due to the unjust increase of culpability applied at sentencing in this case causing grave prejudice to the petitioner.

## CONCLUSION

Wherefore, petitioner prays that this court review the merits of this petition and thereby vacate, set aside, or correct the otherwise illegal and unconstitutional sentence rendered in this case. Futher by finding the USSG 4A1.1(d) was applied in error pursuant to the now presented documentation brought to this courts attention through the exercise of due dilligence. The date being in which due dilligence would begin according to statute would be the date petitioner recieved said supporting documentation Dec.29 2003 wherefrom this judgement petitioner prays.

Respectfully Submitted
This 27th day of June, 2004
Tyrone Powell

Exhibit A

IN THE MUNICIPAL COURT OF SOUTH BAY JUDICIAL DISTRICT,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

NO. 9SB08939
PAGE NO. 1
THE PEOPLE OF THE STATE OF CALIFORNIA VS. CURRENT DATE 12/29/03
DEFENDANT 02: TYRONE POWELL

DOB 10/07/66 OLN C3305554 CA VLN
LAW ENFORCEMENT AGENCY EFFECTING ARREST: GARDENA POLICE DEPARTMENT

| BAIL: APPEARANCE DATE | AMOUNT OF BAIL | DATE POSTED | RECEIPT OR BOND NO. | SURETY COMPANY | REGISTER NUMBER |
|---|---|---|---|---|---|
| | $500.00 | 12/02/99 | SBA257520010 | BARBRA WILLIAMS | |

CASE FILED ON 11/29/99.
COMPLAINT FILED, DECLARED OR SWORN TO CHARGING DEFENDANT WITH HAVING COMMITTED, ON OR ABOUT 10/31/99 IN THE COUNTY OF LOS ANGELES, THE FOLLOWING OFFENSE(S) OF:
COUNT 01: 242 PC MISD - BATTERY.
NEXT SCHEDULED EVENT:
11/29/99 830 AM ARRAIGNMENT DIST SOUTH BAY DIV 708

ON 12/02/99 AT 830 AM IN SOUTH BAY DIV 708

CASE CALLED FOR ARRAIGNMENT
PARTIES: FRANCIS J. HOURIGAN III (JUDGE) MARILYNN HOLCOMB (CLERK)
ANNETTE R. HOGAN (REP) LILIANA H. GONZALEZ (DA)
PUBLIC DEFENDER DECLARES UNAVAILIBILITY.
COURT APPOINTED COUNSEL PURSUANT TO 987.2 P.C. L'TANYA M. BUTLER - B.P.
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY L'TANYA M. BUTLER BAR PANEL ATTORNEY
DEFENDANT STATES HIS/HER TRUE NAME AS CHARGED.
A COPY OF THE COMPLAINT AND THE ARREST REPORT GIVEN TO DEFENDANTS COUNSEL.
DEFENDANT WAIVES ARRAIGNMENT, READING OF COMPLAINT, AND STATEMENT OF CONSTITUTIONAL AND STATUTORY RIGHTS.
DEFENDANT WAIVES FURTHER ARRAIGNMENT.
DEFENDANT PLEADS NOT GUILTY TO COUNT 01, 242 PC - BATTERY.
COURT ORDERS AND FINDINGS:
-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
WAIVES STATUTORY TIME.
NEXT SCHEDULED EVENT:

01/13/00 830 AM PRETRIAL CONF/TRIAL SETTING DIST SOUTH BAY DIV 708
DAY 00 OF 30
12/02/99 BAIL TO STAND, # SBA257520010

CUSTODY STATUS: BAIL TO STAND

ON 01/13/00 AT 830 AM IN SOUTH BAY DIV 708

CASE CALLED FOR PRETRIAL CONF/TRIAL SETTING
PARTIES: FRANCIS J. HOURIGAN III (JUDGE) PENNY DOVAL (CLERK)
ANNETTE R. HOGAN (REP) RONALD GELTZ (DA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY L'TANYA M. BUTLER BAR PANEL ATTORNEY
ATTORNEY AGREES TO BE AVAILABLE. ATTORNEYS WILL SHARE SAME INVESTIGATOR.
COURT ORDERS AND FINDINGS:
-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
NEXT SCHEDULED EVENT:

CASE NO. 9SB08939
DEF NO. 02



03/15/00 830 AM JURY TRIAL DIST SOUTH BAY DIV 708
DAY 10 OF 10
01/13/00 BAIL TO STAND, # SBA257520010

CUSTODY STATUS: BAIL TO STAND

ON 03/15/00 AT 830 AM IN SOUTH BAY DIV 708

CASE CALLED FOR JURY TRIAL
PARTIES: FRANCIS J. HOURIGAN III (JUDGE) JAMES W. AHN (CLERK)
ANNETTE R. HOGAN (REP) KATHLEEN DIESMAN (DA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY L'TANYA M. BUTLER BAR PANEL ATTORNEY
DEFENDANT ADVISED OF AND PERSONALLY AND EXPLICITLY WAIVES THE FOLLOWING RIGHTS:
WRITTEN ADVISEMENT OF RIGHTS AND WAIVERS FILED, INCORPORATED BY REFERENCE HEREIN
THE COURT FINDS THAT EACH SUCH WAIVER IS KNOWINGLY, UNDERSTANDINGLY, AND

EXPLICITLY MADE; COUNSEL JOINS IN THE WAIVERS
THE DEFENDANT PERSONALLY WITHDRAWS PLEA OF NOT GUILTY TO COUNT 01 AND PLEADS NOLO CONTENDERE WITH THE APPROVAL OF THE COURT TO A VIOLATION OF SECTION 242 PC IN COUNT 01. THE COURT FINDS THE DEFENDANT GUILTY.
COUNT (01) : DISPOSITION: CONVICTED
COURT ACCEPTS PLEA
MISDEMEANOR ADVISEMENT OF RIGHTS, WAIVER, AND PLEA FORM SIGNED AND FILED.
NEXT SCHEDULED EVENT:
SENTENCING
DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING JUDGMENT:
AS TO COUNT (01):
IMPOSITION OF SENTENCE SUSPENDED
DEFENDANT PLACED ON SUMMARY PROBATION
FOR A PERIOD OF 001 YEARS UNDER THE FOLLOWING TERMS AND CONDITIONS:
SERVE 002 DAYS IN LOS ANGELES COUNTY JAIL
LESS CREDIT FOR 2 DAYS
DEFENDANT SHALL PAY RESTITUTION IN THE AMOUNT OF $100.00 TO THE RESTITUTION FUND THROUGH THE COURT

TOTAL DUE: $100.00
IN ADDITION:
-OBEY ALL LAWS AND ORDERS OF THE COURT.
DEFENDANT ORDERED TO PAY FINE FORTHWITH IN CLERK'S OFFICE.

DEFENDANT ORDERED TO HAVE NO CONTACT WITH VICTIM DARRYL THOMAS.

THE COURT FINDS THE DEFENDANT CANNOT PAY THE COSTS OF LEGAL SERVICES.
COUNT (01): DISPOSITION: CONVICTED
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
03/15/00 900 AM FINE PAYMENT(S) DIST SOUTH BAY DIV CLK

CUSTODY STATUS: ON PROBATION

ON 03/15/00 AT 900 AM IN SOUTH BAY DIV CLK

CASE NO. 9SB08939
DEF NO. 02

PAGE NO 3
DATE PRINTED 12/29/03

CASE CALLED FOR FINE PAYMENT(S)
PARTIES: NONE (JUDGE) NONE (CLERK)
NONE (REP) NONE (DDA)
DEFENDANT IS PRESENT IN COURT, AND NOT REPRESENTED BY COUNSEL
DEFENDANT APPEARS IN PRO PER
PAYMENT IN THE AMOUNT OF $100.00 PAID ON 03/15/00 RECEIPT # SBA429966017
NEXT SCHEDULED EVENT:
PROBATION IN EFFECT
03/15/00 EXONERATED, # SBA257520010

CUSTODY STATUS: ON PROBATION

ON 06/21/02 AT 800 AM :
PETITION AND ORDER UNDER P.C. 1203.4 RECEIVED AND FILED.

COSTS FOR EXPUNGEMENT IN THE AMOUNT OF $60.00 PAID ON RECEIPT

NUMBER SBA462279011.
PROCEEDINGS TERMINATED

ON 07/17/02 AT 800 AM :
CASE REFERRED TO DIVISION 6 REGARDING P.C. 1203.4 FOR FURTHER ORDERS OF THE COURT. (RP)
PROCEEDINGS TERMINATED

ON 07/19/02 AT 800 AM :
THE COURT HEREBY DENIES THE PETITION 1203.4 PC WITHOUT PREJUDICE.
PROCEEDINGS TERMINATED

12/29/03

I HEREBY CERTIFY THIS TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL DOCKET ON FILE IN THIS OFFICE.
JOHN A. CLARKE , EXECUTIVE OFFICER/CLERK OF SUPERIOR COURT, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

BY ______________________, DEPUTY

Probation Terminated
3.15.01



Ground 2---Sentencing Violation of the 5th and 6th Amendment
of the United States Constitution

The United States Constitution was not amended by the United States Sentencing Guidelines (USSG) or the SRA. Congress nor the Executive can amend the Constitution or change it by decree or legislation. This is so despite motives or motivation. Further, no court may interpret a legislative act in any manner that conflicts with the Constitution. Often, legislators and courts will believe some legislation or practice, or an interpretation is constitutionally valid, until the item is examined in some way or manner that focuses on an individual constitutional aspect or question. And, quite often, such is done for the first time in any meaningful manner in the United States Supreme Court. This is precisely what has happened many times in the past, and what has again ocurred.

The fact is **In re Winship**, 397 US 358, 90 S.Ct. 1068, 25 L.Ed.2d 375 (1970), was no "new law" at the time it was issued and was certainly the law when Congress passed the SRA in 1984. It was very much established law when the USSG took effect and was implemented in 1987.

The unfortunate fact that Congress passed, and that the Courts accepted and affected it in an unconstitutional manner (pursuant to their legislation) is of no consequence. The fact that Congress passed a statute containing a mandated practice that worked unconstitutionally in some cases (i.e. <u>requiring</u> sentencing courts to increase a defendant's sentence beyond the maximum authorized by the guilty verdict) is no different than any misinterpretation of a statute, such as that which ocurred concerning Title 18, USC §924(c), concerning the incorrect understanding of the word "use". The Supreme Court finally settled the issue, against accepted prevailing opinions, by its decision in **Bailey v. United States**, 516 US 137 (1995); however, it was not until the Court revisited the issue in **Bousley v. United States**, 140 L.Ed.2d (1998) that the lower courts were brought in line. The Courts were instructed in Bousley "what" a <u>substantive constitutional ruling</u> (not "rule" but ruling) **<u>meant</u>**. What a

substantive ruling was as well as operated was set out quite plainly. (See at 841-42) a substantive ruling as opposed to a "new rule of constitutional procedure" required no retroactivity analysis. Indeed, until **Bousley** was issued some courts were in denial and interpreted the **Bailey** holding differently. Some refused to treat it retroactively or give it the status of a substantive ruling. A frequently used excuse was that the Supreme Court "had not declared **Bailey** retroactive to cases on collatteral review". Such was a **misinterpretation** of the ruling as a "new rule" (or as is more properly defined "new law") rather than correctly recognizing that **Bailey** was a substantive ruling correcting a mis-defining of a statute, that allowed a practice that was unconstitutional. That is, allowing one to be convicted of a crime for which he might not be guilty through a lesser standard of proof and without proof of all elements of the offense beyond a reasonable doubt. There is no meaningful legal distinguishing characteristics that can be pointed out between the Bailey/Bousley issue and the legal circumstances of Blakely/Booker.

> "This case does not raise any question concerning the **possible retroactive application** of a **new rule of law. c.f., Teague v. Lane,....**[Bailey] **did not change the law.** It merely **explained what §924(c) had meant ever since the statute was enacted.** The fact that a number of courts of appeals had construed the statute differently is of no greater legal significance than the fact that 42 U.S.C. §1981...had been consistently misconstruedprior to our decision in **Patterson v. McLean Credit Union,** 491 US 164, 105 L.Ed.2d 132, 109 S.Ct. 2363 (1989). Our comment on the significance of the **Pre-Patterson** jurisprudence applies equally to the **Pre-Bailey** cases construing §924(c): "**Patterson** did not overrule **any prior decision of this Court; rather, it held and therefore established that the prior decisions of the courts of appeals which read §1981 to cover discriminatory contract termination were incorrect.** They were not wrong according to some abstract standard of interpretive validity, **but by the rules that necessarily govern our hierarchical federal court system....**It is this Court's responsibility to say what a statute means, and once the court has spoken, **it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after** the decision of the case giving **rise** to that construction." Rivers v. Roadway **Express, Inc.**, 511 US 298, 312-13, 128 L.Ed.2d 274, 114 S.Ct. 1510 (1994)."

Id., **Bousley**, at 841-42 (J. Stevens concurrance, emphasis added and in original)

As Justice Stevens (the Author of **Booker** I) explained, **no new rule of procedure was involved. Bailey** had not "changed the law", but explained what the law meant ever since its enactment (exactly what Stevens' decision did in the case of the USSG in Booker). And, "[T]he fact that a number of courts of appeals had construed the statute differently", was of no significance or legal moment. This same situation arose when the decision was rendered in **Apprendi**, and has perpetuated in error ever since. In fact, there is no place at any point in any of these decisions that has refered to them as some "new law" or "new rule of procedure". And, more significantly, every decision from every court of appeals delaring them as announcing a "new law" or "new rule of procedure" has done so by conclusory statements and not analysis. These conclusory decisions are marked by only a cross-reference to each other, or other conclusory cases, without proper scruitiny and without an examination of the elements of the so-called "new law", to determine if it fits the definition at all, or should be classes as a substantive decision. Indeed, once examined, these **Apprendi** cases fit the defining criteria of substantive decisions and do not (in any way) resemble "new law" or "new rules of procedure". This is especially evident when reading **Booker I.** No party has ever addressed this crucial issue, nor explained at all why the ruling(s) require a retroactivity analysis, when if the decision is a substantive one it is immune from such procedure.

The duty of the courts is "[t]o respect that understanding of the governing rule of law," once the Supreme Court has spoken. Pointedly, the Supreme Court has held that any time a judge imposed sentence by increasing the penalty beyond that maximum authorized by the guilty verdict; that is, beyond the initial guideline range that attached at the finding of guilt (because that **is the "ststutory maximum for sentencing purposes)** the sentence

violated the Sixth Amendment. Why? Because the judge had found guilt of other crimes after jury trial, by a preponderence of the evidence. Thus, **THAT practice was unconstitutional, void, and never law.**

This was interpreted as the law **at the time of the passage of the SRA and the implementation of the USSG.** Such practice was always unconstitutional, not just "suddenly" so. No "new law" was handed down from the Supreme Court whatsoever; on the contrary, what was done was the application of log-standing well-established law to the new legal practice implemented in 1987. Such practice, being invalid constitutionally, was **never law:**

> "The conception of the judicial role that [Chief Justice John Marshall] possessed, and that was shared by succeeding generations of American judges until very recent times, took it to be 'the province and duty of the judicial department to say what the law is'**Marbury v. Madison**, 5 U.S. (1 Cranch) 137, 177, 2 Ed.60 (1803)--not what the law shall be. That original and enduring American perception of the judicial rolesprang not from the philosophy of Nietzsche but from the jurisprudence of Blackstone, which viewed **retroactivity** as an inherent characteristic of the judicial power, a power 'not delegated to pronounce a new law, but to **maintain and expound the old one.**' 1 W. Blackstone, Commentaries 69 (1765) Even when a 'former determination is most evidently contrary to reason...[or] contrary to the devine law,' a judge overruling that decision would not **pretend to make a new law, but to vindicate the old one from misrepresentation.'** Id. at 69-70 'For if it be found that the former decision is manifestly absurd or unjust, it is declared, **not that such a sentence was bad law, but that it was not law.'** Id. at 70 (emphasis in the original). Fully retroactive decision making was considered a principle distinction between the judicial and the legislative power: '[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases.' T. Cooley, Constitutional Limitations. 91. The critics of the traditional rule of full retroactivity were well aware that it was grounded in what one of them contemptuously called 'another fiction known as Separation of Powers. Kocourek Retrospective Decisions and Stare Decisis and a Proposal, 17 A B.A J 180, 181 (1931)."

**Id.** Justice Scalia, concurring in **Harper v. Virginia Dept. of Taxation**, 509 US 86, 107, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (emphasis added and in original)

See also, **Hulin v. Fiberboard Corp.**, 178F.3d 316, 329 and n. 5 (5th Cir 1999).

Therefore, if that practice has been declared unconstitutional and "not law" such is a substantive decision and not a "new law" or new procedure, and must be retroactively applied without engaging in a misplaced retroactivity analysis. **Blakely** redefined a statutory construction, and **Booker** I declared that **Blakely** applies to the USSG. Therefore, by definition, it can not be held as anything but a substantive decision.

**Apprendi** and its progeny (especially Blakely) constitute substantive decisions that preclude application of **Teague v. Lane** analysis. The law has been defined as to its meaning from its enactment. This is a redefining of what the law meant and a clarification--not a change in or a new law. This was according to how that law (SRA) was written, and rembering that the provisions in question were, in fact, recognized as quite constitutional and thus valid, the law had to operate in a manner legally valid and constitutional (i.e., a manner in which it did not violate the Sixth Amendment). To do so, every range of the USSG had to be interpreted as creating a maximum sentence for statutory purposes. That initial guideline range attached at the time of the guilty finding by the jury or admission by the defendant. The judge at sentencing could not (ever) violate the Sixth Amendment when imposing sentence. If a judge did so, regardless of what he or any court of appeals thought it was wrong, invalid, and "not law" (nor legal). This is nothing new, nor some new concept. **In re Winship**, supra, 397 US 358, 364 (1970) concerning proof of guilt beyond a reasonable doubt of every element of a crime charged by a jury existed in the Sixth Amendment when the USSG were implemented. Those protections are nothing but well established and fundamental. To call such protections "new" or "new law" is absurd. Such preposterous and arbitrary labling manifests either negligence or some ulterior motive and defies common sense. To do so is to propose that when the USSG were implemented, the **Winship** protections were suspended, and that when Blakely or Booker was delivered, those protections were suddenly (and newly) reinstated.

That defies logic and the reduces the Constitution to the status of a statute.

As the Court explained in **Bunkley v. Florida**, 538 US ____, 155 L.Ed.2d 1046, 123 S.Ct. ____(2003), the Due Process Clause (also spoken of in **Apprendi**) forbids a state to convict any defendant without proving the elements of the crime beyond a reasonable doubt. Despite the Florida Supreme Court's refusal to hold a redefining of the law "retroactive", the U.S. Supreme Court reversed, declaring that any such redefining was a substantive decision to which retroactivity analysis was inappropriate. Such holdings must be automatically retroactive, per se. (See at [1b]) because the correction in the law therefore defined the law today as well as when the defendant was convicted. Thus, if not automatically retroactively applied, the Constitution is made of no effect.

The Court cited to **Fiore v. White**, 531 US 225, 148 L.Ed.2d 629, 121 S.Ct. 712 (2001) ("[The] Pennsylvania Supreme Court's interpretation of the statute, 'stat[ed] the correct interpretation of the law of Pennsylvania at the date that Fiore's conviction became final.'" Id., see Bunkley at 1051, emphasis added)

Indeed, whether there was a change in the law is the essential question in the analysis. There was not. The law passed in 1984 was essentially the same as that examined by the Supreme Court in Booker applying Blakely, and that law was constitutional, but, mandated that (unbeknownst to all until Blakely) that each guideline range created a maximum sentence for statutory purposes. That was the only way the statute (SRA or USSG) could be reconciled with the constitution; and therefore, that was the **correct statement of the law when anyone's conviction became final** until January 12, 2005, when the remedial Breyer (BOOKER II) decision was announced "invalidating" (for other than constitutional purposes) the two sections of the SRA that required such an interpretation, and was causing such Sixth Amendment problems. Blakely and Booker clarified and redefined the SRA so it could work under the Sixth Amendment. That was a substantive ruling--not new law.

Justice Breyer's decision (BOOKER II) at the end, explains that there are "two

holdings" not one holding: "the Sixth Amendment holding" and "our remedial interpretation of the Sentencing Act". He stated that both "had to be applied" to any defendant's case whose sentence was not final, but was silent as to everyone whose sentence had become final. This is of no consequence, and Breyer himself, in his dissent on the Stevens' opinion (BookerI) describes the Stevens holding as substantive. Further, at the end of his opinion (BOOKER II) Breyer references **Reynoldsville Casket Co. v. Hyde**, 131 L.Ed.2d 820 (1995) for the explanation that the issuance of one decision voiding one statute, does not effect the operation of the other (e.g., the remedial action in his opinion does not make the Stevens opinion of no effect, and it remains the correct interpretation of the law).

Any other interpretation cannot be reconciled with the Constitution, and allows those unlawfully sentenced to be left illegally serving time in violation of the Constitution, and laws of the United States. Such is itself unconstitutional.

Therefore, Booker I must be construed as it is: a **substantive ruling** and the Bryer fix as a new rule. Only in this manner can the Constitution be respected and justice done.

Respectfully

[signature]

Tyrone Powell
Reg#10412-041

2-28-05

DATE

**U.S. Department of Justice**

*United States Attorney*
*District of Minnesota*

*600 United States Courthouse*
*300 South Fourth Street*
*Minneapolis, MN 55415*

*(612)664-5600*

January 7, 2005

VIA FACSIMILE
651-848-1305
Mr. Michael Gans, Clerk
U.S. Court of Appeals for
the Eighth Circuit
500 U.S. Courthouse
316 North Robert Street
St. Paul, MN 55101

**Re: <u>United States v. Tyrone Powell</u>**
**Eighth Circuit No. 04-3709**

Dear Mr. Gans:

Enclosed for filing please find the original and there copies of the United States' Motion to File Motion to Dismiss out of Time and the United States' Motion to Dismiss Application in regard to the above-entitled matter.

by copy of this letter and its enclosures, appellant is ebing served.

Sincerely,

THOMAS B. HEFFELFINGER
United States Attorney

BY: JOSEPH T. DIXON, III
Assistant U.S. Attorney
Attorney ID No. 0283903

JTD:ama

Enclosures

cc: Mary Kay Furchner, U.S. District Court
Tyrone Powell, Pro Se.

CERTIFICATE OF SERVICE BY MAIL

RECEIVED
BY MAIL
MAR 14 2005
CLERK, US DIST. COURT
ST. PAUL, MN

UNITED STATES OF AMERICA, )
Appellee, )
v. ) Appellate No. 04-3709
TYRONE POWELL, )
Appellant. )

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the State and District of Minnesota and is a person of such age and discretion as to be competent to serve papers.

That on January 7, 2005 she served a copy of the attached:

UNITED STATES' MOTION TO FILE MOTION TO DISMISS OUT OF TIME
and the UNITED STATES' MOTION TO DISMISS APPLICATION

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

Addressee(s):

Tyrone Powell, Pro se.
#10412-041
U.S. Medical Center for Federal Prisoners
3301 Leetown Road
Lexington, KY 40511

A. M. ARCE

RECEIVED
BY MAIL
MAR 14 2005
CLERK, US DIST. COURT
ST. PAUL, MN

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
Cr. 02-63(2)
Appeal No. 04-3709

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>TYRONE POWELL,<br><br>Defendant-Applicant. | ) | UNITED STATES' MOTION TO DISMISS APPLICATION |

The United States of America, through its attorneys, Thomas B. Heffelfinger, United States Attorney, and Assistant United States Attorney Joseph T. Dixon, III, moves the Court pursuant Rule 27(a), Federal Rules of Appellate Procedure for a summary dismissal of this application for second or successive habeas petition.

After defendant filed a habeas petition with the district court on or about June 27, 2004, the Clerk of Court returned the petition to the defendant, advising him that his petition was a successive petition and that he needed to seek permission from the Court of Appeals. <u>See</u> Exhibit A (attached hereto). Defendant then filed the instant application. While the Clerk of Court's understanding of defendant's petition was understandable given the information set forth in the petition, in fact, defendant's first petition was not decided on the merits. <u>See</u> Order dated January 14, 2004 (attached hereto). Accordingly, the subsequent petition does not constitute a "second or successive petition." <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000); <u>see also</u> <u>Weaver v. Bowersox</u>, 241 F.3d 1024 (8th Cir. 2001).

Accordingly, the United States requests that this Court dismiss defendant's application with instruction to refile his petition with the district court. The United States reserves the right to oppose defendant's petition once filed with the district court but agrees to affirm its position that the petition is not "second or successive."

Respectfully submitted,

Dated: January 7, 2005

THOMAS B. HEFFELFINGER
United States Attorney

BY: JOSEPH T. DIXON, III
Assistant U.S. Attorney

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

January 28, 2005

RECEIVED
BY MAIL
MAR 14 2005
CLERK, US DIST. COURT
ST. PAUL, MN

Tyrone Powell
U.S. MEDICAL CENTER FOR FEDERAL PRISONERS
#10412-041
3301 Leetown Road
Lexington, KY 40511

Re: 04-3709 Tyrone Powell vs. United States

Dear Mr. Powell:

Enclosed is a copy of an order entered today in the above case.

(5009-010199)

Sincerely,

Michael E. Gans
Clerk of Court

cmd

Enclosure(s)

cc: Honorable Paul A. Magnuson, U.S. District Judge
Andrew Stephen Dunne
Richard Sletten, Clerk

District Court/Agency Case Number(s): CIV 03-6524 PAM

# UNITED STATES COURT OF APPEALS

## FOR THE EIGHTH CIRCUIT

RECEIVED
BY MAIL

MAR 14 2005

CLERK, US DIST. COURT
ST. PAUL, MN

No. 04-3709

| | |
|---|---|
| Tyrone Powell, | * |
| Petitioner, | * |
| v. | * Petition for Permission to File a Successive Habeas Petition |
| United States of America, | * |
| Respondent. | * |

**JUDGMENT**

Petitioner's appeal is dismissed without prejudice. Mandate shall issue forthwith.

(5361-010199)

January 28, 2005

Order Entered at the Direction of the Court

Michael E. Gans

Clerk, U.S. Court of Appeals, Eighth Circuit